UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC, | ) | Civil Action No.: 4:08-cv-1797-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| JAMES F. SHEEDY, JR. | ) | |
| and JIMMAGAN'S, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

Plaintiff brings this action pursuant to 47 U.S.C. § 553 for the unauthorized reception of cable service and 47 U.S.C. § 605 for the unauthorized publication or use of communications. Presently before the Court is Plaintiff's Motion for Summary Judgment (Document # 61). Because Defendant Sheedy is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion could result in the Motion being granted. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e),DSC. Because Plaintiff's Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

## II.     PROCEDURAL HISTORY

Plaintiff filed this action on May 5, 2008. Defendants James F. Sheedy, Jr. and Jimmigan's Inc. filed an Answer (Document # 7) through counsel. Counsel for Defendants subsequently filed a Motion to Withdraw as Counsel (Document # 18). A hearing was scheduled on this, and other, motions, and, at the direction of the court, counsel for Defendants notified them that their presence

at the hearing was required. Defendants did not appear. The court granted the Motion to Withdraw as Counsel at the hearing. In a written Order (Document # 27), Defendants James F. Sheedy, Jr. and Jimmigan's Inc., were given thirty days from the date of the hearing to obtain new counsel and for new counsel to file a notice of appearance. In the Order, the court noted that Defendant James F. Sheedy, Jr. could proceed without counsel, but warned that, as a corporation, Defendant Jimmigan's Inc. could not proceed pro se. The court further warned that Jimmigan's Inc. would be in default if no Notice of Appearance was filed on its behalf within thirty days. No Notice of Appearance was filed on behalf of either Defendant within the thirty days.

Plaintiff subsequently filed a Motion for Default Judgment (Document # 38). The undersigned filed a Report and Recommendation (Document # 39), recommending that an Entry of Default be made as to Jimmigan's but that Sheedy not be found in default. The undersigned also recommended that default judgment was premature. Prior to an Order being entered on the Motion for Default Judgment, new counsel filed a Notice of Appearance (Document # 41) on behalf of both Defendants. New counsel did not, however, file any Objections to the Report and Recommendation. The Report and Recommendation was subsequently adopted by the district judge and an Entry of Default was made as to Jimmigan's.

Defendants' new counsel also filed a Motion to Withdraw (Document # 45) as counsel. A hearing was set and, as directed by the court, new counsel informed Defendants of the requirement that they be present at the hearing. Neither Defendant appeared at the hearing and new counsel's Motion to Withdraw was granted. Plaintiff then filed the present Motion for Summary Judgment. Defendants have not filed a Response to the Motion for Summary Judgment.

**III.   FACTS**[1]

By contract, Plaintiff Joe Hand Promotions, Inc., paid for and was thereafter granted the exclusive nationwide television distribution rights to the Ultimate Fighting Championship 71: Chuck Liddell v. Quinton Jackson, including all under-card bouts and fight commentary encompassed in the television broadcast of the event, which aired on Saturday, May 26, 2007 (hereinafter referred as the "Program"). Pursuant to contract, Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of South Carolina, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program to patrons within their respective establishments (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.).

On Saturday, May 26, 2007, private investigator Jeff S. Spivack observed the exhibition of Plaintiff's Program at the Defendants' place of business during business hours. Spivack Affidavit (attached as an Exhibit to Plaintiff's Motion). In his Affidavit, Spivack sets forth that he entered Jimmigan's, located at 6003 North Kings Highway, Myrtle Beach, South Carolina, on May 26, 2007.[2] Id. He describes the bartender who served him and the number of televisions and other distinguishing features of the establishment. Id. He also describes the names and attire of the fight participants in a preliminary bout in the Program, the announcer's name, and the outcome of the bout. Id. Spivack

---

[1] The facts are undisputed by virtue of Defendant Jimmigan's default and because Defendants failed to respond to the Motion. Furthermore, Plaintiff served Requests for Admission on Defendants to which they never responded. See Requests for Admission and Affidavit of Service (attached as an Exhibit to Plaintiff's Motion).

[2] There is a discrepancy in the Affidavit as to the time Spivack was present at Jimmigan's on May 26, 2007. He stated that he arrived at 11:52 p.m. and left at 10:51 p.m. Spivack Affidavit.

avers that fifteen to seventeen people were present at Jimmigan's while he was there and that Jimmigan's has an estimated capacity of 110 people. Id. By their failure to respond to the Requests for Admission, Defendants admit that they received the Program by both cable and satellite service. Requests for Admission ¶¶ 16-19.

## IV.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V.    DISCUSSION

Plaintiff asserts that Defendants' actions have violated both 47 U.S.C. § 553 and 47 U.S.C. § 605. These two statutory schemes provide relief for the alternate means of reception–cable and satellite, respectively–of the Program. Plaintiff also asserts a common law claim for conversion.

Section 553 provides that

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations with a maximum $50,000 enhancement for willfulness. 47 U.S.C. §§ 553(c)(3)(A)(ii), 553(c)(3)(B). Additionally, § 553 allows for an award of attorney's fees and costs. 47 U.S.C. § 553(c)(2)(C).

Section 605 provides, in pertinent part, that

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof [ ] to [ ] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 with a $100,000 maximum enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii). Additionally, § 605 provides for a mandatory award of attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

To prove the tort of conversion, "the plaintiff must establish either title to or right to the possession of the personal property." Moseley v. Oswald, 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008); see also Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P., 385 S.C. 452, 466, 684 S.E.2d 756, 763 (2009) (discussing the availability of a conversion claim for documented, intangible property rights).

The evidence in the record is sufficient to show that Defendants are liable for conversion. Generally, the damages for conversion of personal property is the value of the property with interest. Equitable Life Assurance Society of the United States v. Okey, 812 F2d 906 (4th Cir. 1987). Plaintiff seeks $975.00 in actual damages. Plaintiff reaches this amount based upon the amount Defendants would have had to pay for a commercial sublicense fee to legally air the Program. Spivack avers that Jimmigan's had a seating capacity of approximately 110 people, which, according to the Rate Card produced by Plaintiff, would require a commercial sublicense fee of $975.00. See Spivack Affidavit; Hand Affidavit ¶ 8; Rate Card (attached as Exhibit 1 to Hand Affidavit). Thus, Plaintiff is entitled to $975.00 on the conversion claim.

The evidence in the record is also sufficient to show that Defendants violated § 553 and § 605. By their failure to respond to the Requests for Admission, Defendants admit that they received the Program by both cable and satellite service. In its previously filed Motion for Default Judgment (Document # 38), Plaintiff elected to proceed under § 605, as it has done in similar cases in this

-6-

court.[3] See, e.g., Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug.23, 2010); Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., 4:10-801-TLW-SVH, 2010 WL 5141768, *2 (D.S.C. Oct. 1, 2010); Joe Hand Promotions, Inc. v. Scott's End Zone, Inc., 759 F.Supp.2d 742, 748 (D.S.C. 2010).  Plaintiff has made no such election in the present motion and seeks damages under both § 553 and § 605.  However, an award of damages under both sections is not appropriate.  Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug.23, 2010); J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC, 648 F.Supp.2d 469, 472 (E.D.N.Y. 2009).  Although § 605 provides a higher maximum enhancement for willful violations ($100,000) than does § 553 ($50,000), this distinction is of no moment in the present case in light of the amount of damages the undersigned recommends.

   Plaintiff seeks $10,000 in statutory damages, which is the maximum available pursuant to both 47 U.S.C. § 605(e)(3)(C)(i)(II) and 47 U.S.C. §§ 553(c)(3)(A)(ii).  Plaintiff argues for the maximum recoverable statutory damages for the deterrent effect it may have in minimizing such future conduct.  Courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation.  See J & J Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc.,

---

[3]The court found that default judgment was premature at the time in light of the fact that one Defendant, Sheedy, was not in default and, thus, the Motion for Default Judgment was denied.

2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages); Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug.23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect").

In line with the awards recommended and/or awarded by this court for similar violations, see, e.g., Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug.23, 2010); Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., 4:10-801-TLW-SVH, 2010 WL 5141768, *2 (D.S.C. Oct. 1, 2010); Joe Hand Promotions, Inc. v. Scott's End Zone, Inc., 759 F.Supp.2d 742, 748 (D.S.C. 2010), the undersigned recommends a statutory damages award of $5,000. An award of approximately five times the license fee Defendants should have paid to legally broadcast the Program, when combined with the enhanced damages and attorneys' fees discussed below, is a sufficient deterrent of future conduct.

Plaintiff also seeks enhanced damages of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and $50,000 pursuant to 47 U.S.C. § 553(c)(3)(B). Both statutes allow for enhanced damages in addition to statutory damages when the violation is committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(i)(II); 47 U.S.C. § 553(c)(3)(B). Plaintiff's president, Joe Hand, avers, and it is undisputed, that the Program could not have been "mistakenly, innocently or accidentally intercepted." Hand Aff. ¶ 9. Although more than nominal damages should be awarded to deter future violations, the maximum enhancement as sought by Plaintiff is inappropriate due to the absence of evidence of factors that courts find justify a larger award. For example, there is no evidence that Jimmagan's charged a cover, advertised the event, or obtained substantial revenue

from broadcasting the Program. See generally Kingvision Pay-Per-View, Ltd. v. Guiterrez, 544 F.Supp.2d 1179, 1185 (D.Colo.2008) (listing factors that courts consider in awarding enhanced damages). Accordingly, it is recommended that Plaintiff be awarded enhanced damages in the amount of $10,000.

Finally, Plaintiff seeks attorney's fees under both statutes. Section 553(c)(2)(c) provides that a court "may" award attorney's fees and costs while § 605(e)(3)(B)(iii) states that the court "shall" award attorney's fees and costs. Plaintiff seeks attorney's fees in the amount of $10,000 and submits the Affidavit of its counsel, Theodore von Keller, in support.

In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar figure), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.1978); Jackson v. Estelle's Place, LLC, No. 09-1700, 2010 WL 3190697, *4 (4th Cir. Aug.12, 2010). A number of the factors may not be applicable in a particular case and, thus, need not be strictly applied. See E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir.1990)

Mr. von Keller asserts that he is representing Plaintiff on a contingency fee basis, but believes

that $10,000 represents a reasonable legal fee for the services provided in this case. Von Keller Affidavit ¶ 4. He avers that he has spent approximately 50 hours in representing Plaintiff in this matter and typically bills clients at $200 per hour in billable cases. Id. at ¶¶ 2, 7. Mr. von Keller sets forth in his Affidavit the work that he has done on this case. Id. at ¶ 1. The undersigned finds Mr. von Keller's rate of $200 per hour to be reasonable. Accordingly, it is recommended that Plaintiff be awarded the requested $10,000 in attorney's fees.

## VI. CONCLUSION

In light of the above discussion, it is recommended that Plaintiff's Motion for Summary Judgment (Document # 61) be granted. It is further recommended that Plaintiff be awarded either (1) statutory and enhanced damages in the amount of $15,000 and attorney's fees in the amount of $10,000, for a total award of $25,000 on its claims under 47 U.S.C. § 605 and 47 U.S.C. § 553, or (2) actual damages in the amount of $975 on its conversion claim. Within fourteen days of the date of this Report and Recommendation, Plaintiff must elect between recovery on the statutory claims or the conversion claim. It is recommended that Defendants be jointly and severally responsible for these damages.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

July 29, 2011  
Florence, South Carolina

**The parties are directed to the important notice on the following page.**